**PELTON GRAHAM** LLC

ADVOCATES FOR JUSTICE

March 15, 2021

Taylor B. Graham, Esq.
Graham@PeltonGraham.com

**VIA CM/ECF**

Magistrate Judge Robert M. Levy
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**Re:**   *Garris, et al. v. Ava Pork Products, Inc. et al*
         **Civil Action No. 20 Civ. 05400 (RML)**

Dear Judge Levy:

We represent plaintiffs Ivan Garris ("Garris") and Shon Frazier ("Frazier," together with Garris, the "Plaintiffs") with respect to their claims for unpaid overtime premiums, failure to provide proper wage notices and wage statements, as well as Plaintiff Garris' individual retaliation claims, against AVA Pork Products, Inc., "John Doe" As Personal Representative of the Estate of Albert L. Girgenti, deceased, and Leonard E. Lombardi, Jr. (collectively, the "Defendants"). We write, together with counsel for Defendants, seeking the Court's approval of the parties' settlement, pursuant to the Fair Labor Standards Act ("FLSA") and the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). The Parties believe that the fully-executed Settlement Agreement and Release ("Settlement Agreement") (attached to the Affidavit of Taylor B. Graham, Esq. as **Exhibit A**[1]), constitutes a fair and reasonable compromise of this matter, which should be approved by the Court.

**I.      Procedural History and Plaintiffs' Allegations**

The Plaintiffs commenced this action by filing a Class & Collective Action Complaint on November 6, 2020 against Defendants. (Dkt. No. 1 ("Complaint")). On both December 14, 2020 and January 14, 2021, Defendants sought, with Plaintiffs' consent, an extension of their time to answer, move, or otherwise respond to Plaintiffs' Complaint, as the parties expressed their interest in engaging in settlement negotiations, which the Court granted. (Dkt. Nos. 7, 8). Your Honor scheduled an initial conference for March 8, 2021, which the parties jointly requested be adjourned, in light of the parties' continued negotiations and to permit the parties adequate time to finalize and fully-execute the Settlement Agreement. (*See* Dkt. Nos. 9-11).

To aid in the negotiation process, Defendants provided payroll records for Plaintiffs that account for both the FLSA and NYLL periods, an individual Form LS-54 executed by each

---

[1] All Exhibits referenced herein are attached to the Graham Aff., unless otherwise stated.

**New York**: 111 Broadway, Suite 1503, New York, NY 10006  Tel. 212-385-9700  Fax 212-385-0800
**San Francisco**: 456 Montgomery Street, 18th Fl., San Francisco, CA 94104  Tel. 415-437-9100  Fax 212-385-0800

www.PeltonGraham.com

Honorable Robert M. Levy
Plaintiffs' Letter Regarding Fairness of FLSA Settlement
Page **2** of **6**

Plaintiff, as well as documents related to a prior New York State Department of Labor ("NYSDOL") complaint filed by Plaintiff Garris against Defendants, seeking unpaid wages, including overtime premiums.[2]

Plaintiffs utilized the records provided by Defendant to create a damages computation, focusing on unpaid overtime premiums for the periods that Plaintiffs were paid on a salary basis with no overtime for hours worked over 40 each week. Plaintiffs exchanged the damages computation spreadsheet with Defendants in early January 2021 and the parties subsequently engaged in several discussions regarding the computation and alleged damages, ultimately resulting in an agreement to settle Plaintiffs' claims on the terms memorialized in the Settlement Agreement. Defendants denied and continue to deny any and all wrongdoing.

## II.    The Settlement Accounts for Litigation Risk

As set forth in the Complaint, Plaintiffs are former warehouse workers and supervisors in Defendants' Hicksville meatpacking facility. While working as warehouse workers, Plaintiffs were paid on an hourly basis, but when promoted to "supervisor" positions, Plaintiffs were paid a fixed weekly salary. Throughout their respective employment periods, Plaintiffs were required to consistently work in excess of forty (40) hours per week, which is supported by the payroll records provided by Defendants. Although Plaintiffs alleged that they were not paid overtime premiums while working for Defendants as warehouse workers, the payroll documents produced by Defendants directly contradict these allegations, as the records show overtime premium payments for hours worked over forty (40) in a week. However, when working as supervisors, the records confirm that Plaintiffs were paid a fixed salary without overtime premiums for hours over 40.

Not apparent from the payroll records is the extent to which Plaintiffs performed exempt duties as supervisors, if at all, which the parties dispute. While Plaintiffs allege that even after their promotions into warehouse supervisor positions, Plaintiffs primarily performed manual non-exempt labor work, Defendants counter that after promotion they primarily performed supervisory/management exempt duties and were therefore properly classified as overtime exempt. In addition, while being paid a fixed weekly salary, Plaintiffs alleged that the amount was less than the minimum salary threshold for exempt employees[3], such that the Defendants are unable to claim the exemption during that period. This alleged underpayment also formed the basis for the back wage payment to Plaintiff Garris from the NYSDOL. Defendants maintain that the NYSDOL investigation not only compensated Garris for his unpaid overtime claims, but also resolved the unpaid overtime premiums of all potential similarly-situated employees.

Finally, Plaintiff Garris alleged that he was retaliated against by Defendants after he complained to the NYSDOL by changing him from his supervisor position in one warehouse to a

---

[2] Plaintiff Garris received approximately $15,961.13 from the NYSDOL for unpaid wages and liquidated damages, covering the period between July 15, 2016 through July 15, 2019.

[3] The salary threshold for exempt employees for large employers in NYC under the NYLL was as follows: $675.00 on and after 12/31/15; $825.00 on and after 12/31/16; $975.00 on and after 12/31/17; and $1,125.00 on and after 12/31/18.

stationary position in another warehouse whereby he was tasked with watching equipment, rather than using his skills and experience. Defendants deny that any changes to Garris's post had anything to do with Garris's complaint to the NYSDOL and that Garris did not suffer any adverse employment action because he retained his same pay and Garris ultimately quit his job on his own accord.

In furtherance of the settlement negotiations, Plaintiffs' counsel created a damages computation for Plaintiffs based on the payroll records exchanged by Defendants and a comparison of Plaintiffs' alleged hours worked. Plaintiffs' final damages computation (**Exhibit B**) resulted in a total of approximately $107,561.55 in total damages for the Plaintiffs. Of that amount, Plaintiff Garris's damages totaled $42,429.33, including $7,287.88 in "actual" unpaid overtime damages, an equal amount in liquidated damages ($7,287.88), $10,000.00 in statutory damages for wage notice and wage statement violations, $6,873.57 in pre-judgment interest on the NYLL unpaid overtime damages (at 9% per annum), and $10,980.00 in retaliation damages[4]. Plaintiff Frazier's damages totaled $65,132.23, including $20,888.41 in "actual" unpaid overtime damages, an equal amount in liquidated damages, $10,000.00 in statutory damages for wage notice and wage statement violations, and $13,355.42 in pre-judgment interest on the NYLL unpaid overtime damages.

Given the numerous factual disputes regarding Plaintiffs' duties and Plaintiff Garris's separation from Defendants, Plaintiffs prefer to settle their individual wage claims now for an amount that permits them to recover approximately 100% of their total actual damages and which they would be guaranteed to receive under the terms of the settlement, rather than proceed with extensive and costly litigation with an unknown outcome. Further, since the parties have already exchanged relevant paper discovery, the parties were able to make an informed decision regarding the strengths and weaknesses of their claims and the benefit of an early settlement to avoid further litigation expense.

### III. Settlement Terms

As set forth in the attached Settlement Agreement, the parties have agreed to resolve this action for a total settlement amount of **$55,000.00** (the "Settlement Amount"). Of that amount, **$18,873.98** is payable to Plaintiffs' counsel (including **$811.00** in expense reimbursements and **$18,062.98** in attorneys' fees). The remaining **$36,126.02** is payable directly to Plaintiffs (the "Net Settlement Amount").

The parties have agreed to a wage-and-hour release for Plaintiff Frazier, as he brought only wage and hour claims against Defendants, and a mutual general release for Plaintiff Garris (and

---

[4] Plaintiff Garris' individual retaliation damages consisted of back pay for an approximate thirty (30) weeks period following Plaintiffs' resignation of his employment with Defendants. During this period, Plaintiff was unemployed for approximately the six (6) weeks immediately following his resignation. For the remaining approximate twenty-four (24) weeks, Plaintiff was employed but receiving a weekly salary of approximately four-hundred eighty dollars ($480.00), a much lower weekly salary than what Plaintiff Garris would have received had he not been forced to resign.

www.PeltonGraham.com

Defendants), as Garris also brought claims against Defendants for retaliation under the FLSA and NYLL. While the parties are mindful of the potential for overreaching by an employer in obtaining an overly broad release in exchange for payment for wage and hour claims, there was no such overreaching here. On the contrary, since the general release is mutual and Plaintiff Garris and Defendants have ceased their employment relationship, the mutual general release simply operates as a "walk away" provision between the parties; "it permits each side to terminate their relationship entirely free from fear that the other will re-engage in the form of a lawsuit." *Strauss v. Little Fish Corp.*, No. 19-cv-10158, 2020 WL 4041511, 2020 U.S. Dist. LEXIS 126393, at *13-14 (S.D.N.Y. July 17, 2020) (approving mutual general release where plaintiff asserted FLSA & NYLL unpaid wage and retaliation claims). Here, Plaintiff Garris will not have to fear that Defendants may further retaliate by bringing a claim against him in the future, while Defendants benefit from not having to face a future claim from Garris. Indeed, through Garris's retaliation claims – unlike his and Frazier's wage and hour claims – Garris "was seeking an affirmative claim[,] not money that was improperly held from him," making his retaliation claim no different from similar claims in Title VII lawsuits which are frequently settled with general releases. *Id.* (citing *Bryant v. Rego Enterprises, LLC*, No. 16-cv-5131 (BMC), 2016 U.S. Dist. LEXIS 178368, 2016 WL 7477614, at *3-6 (E.D.N.Y. Dec. 23, 2016)).

Additionally, the parties also did not include a confidentiality provision and nothing in the Settlement Agreement precludes the parties from truthfully communicating their experiences concerning the Action or Settlement.

Accordingly, the Parties believe that the terms of the Settlement Agreement are not overbroad and mutually benefit all parties allowing them to avoid any further unreasonable expenses and the aggravation of continued litigation.

### IV.     Plaintiffs' Attorney's Fees and Expenses

As set forth in the Affidavit of Taylor B. Graham, Esq. (filed contemporaneously herewith), as of March 15, 2021, Plaintiffs' counsel has spent more than 42 hours in prosecuting and settling this matter, resulting in a lodestar of **$12,316.81**. *See* Graham Aff. Ex. C.  Plaintiffs' counsel has spent approximately **$811.00** in actual litigation costs from filing and serving the complaint. *Id.* at Ex. D. The portion of the settlement amount that Plaintiffs seek as attorneys' fees (i.e., $18,873.98) represents one-third (1/3) of the settlement amount, after subtracting the actual litigation costs, which represents a modest **1.47** multiplier of the lodestar and is consistent with what was agreed upon between Plaintiffs and counsel in their respective retainer agreements. Specifically, the retainer agreement between Plaintiffs and his counsel set forth a contingency fee of one-third (1/3) of any settlement, plus reimbursement of actual litigation costs.

The hourly billing rates utilized by Plaintiffs' counsel in calculating the lodestar are within the range paid to attorneys of similar experience and professional focus in the Eastern District of New York. *See, e.g., Guinea v. Garrido Food Corp.*, No. 19-CV-5860 (BMC), 2020 U.S. Dist. LEXIS 5476, at *4-5 (E.D.N.Y. Jan. 11, 2020) (Providing that rates of "$350-$450 per hour for partner time, $250-$300 per hour for associate time, and $125-$175 per hour for paralegal

time…are reasonable and consistent with rates allowed in this district."). Accordingly, Plaintiffs' counsel submits that the attorney's fees component of the settlement is fair and reasonable.

**V.      The Parties Believe that the Settlement Is Fair and Reasonable**

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc*., No. 11-cv-0529, 2013 U.S. Dist. LEXIS 20543, at *8 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig*., No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786 at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food,* 679 F.2d at 1354). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, the proposed settlement reflects a reasonable compromise of Plaintiffs' claims and disputed issues and did not result from any "overreaching" by the employer. To the contrary, the settlement was the result of arm's-length negotiations, consisting of several communications and exchanges between the parties, during which the parties discussed the merits of Plaintiffs' allegations and the defenses thereto. Additionally, as noted previously, Plaintiffs are both former employees of Defendants, so the fear of possible coercion is not at issue here.

The parties are furthermore represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. The negotiated settlement is fair and reasonable when considered in the context of the litigation risks faced by Plaintiffs and the risk that recovery after trial would be less than the negotiated settlement amount. Settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation. Defendants asserted legitimate substantive defenses which highlighted substantial risk to Plaintiffs' ability to prevail on their FLSA claims in this litigation, as well as Plaintiff Garris' individual retaliation claim. Arm's-length negotiations between knowledgeable counsel followed, culminating in a negotiated resolution.

*     *     *     *     *

Honorable Robert M. Levy
Plaintiffs' Letter Regarding Fairness of FLSA Settlement
Page **6** of **6**

      As demonstrated above, the settlement is a result of substantial negotiations and compromise by both parties. Therefore, the settlement is completely fair, reasonable, and adequate to the Plaintiffs and we respectfully request that the Court approve the Settlement Agreement.

      We appreciate Your Honor's attention to this matter.

      Respectfully submitted,

      */s/ Taylor B. Graham*

      Taylor B. Graham, Esq. of
      PELTON GRAHAM LLC

Enclosure

cc:    All counsel (via CM/ECF)